IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RAYMOND MOFFAT, Individually, and on behalf of all others similarly situated, )<br><br>Plaintiff, )<br><br>v. )<br><br>UNICARE HEALTH INSURANCE COMPANY )<br>Of The Midwest, an Illinois corporation; )<br>UNICARE LIFE AND HEALTH INSURANCE )<br>COMPANY, a Delaware corporation; UNICARE )<br>HEALTH PLANS OF THE MIDWEST, INC.; )<br>UNICARE HEALTH INSURANCE COMPANY )<br>OF TEXAS; and UNICARE HEALTH PLANS )<br>OF TEXAS, INC., )<br><br>Defendants. ) | No. 04 C 5685 |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Raymond Moffat ("Moffat") filed his Class Action Complaint ("Complaint"), purportedly on behalf of all others similarly situated, on August 30, 2004. Moffat asserts a claim under the Illinois Consumer Fraud Act and under ERISA, § 502(a)(1)(B) (29 U.S.C. § 1132(a)(1)(B)), against Defendants UniCare Health Insurance Company of the Midwest ("UniCare Midwest"), UniCare Life and Health Insurance Company ("UniCare Life"), UniCare Health Plans of the Midwest, Inc. ("UniCare Health Midwest"), UniCare Health Insurance Company of Texas ("UniCare Insurance Texas"), and UniCare Health Plans of Texas, Inc. ("UniCare Plans Texas"). Defendants move to dismiss Moffat's Complaint, pursuant to Rule 12(b)(6), arguing that: (1) Raymond Moffat is not the proper plaintiff to bring the ERISA claim;

1

(2) UniCare Midwest is not a proper defendant to the ERISA claim; (3) ERISA preempts Moffat's Consumer Fraud claims; and (4) Moffat's Consumer Fraud claim fails to state a claim for relief because it fails to allege Raymond Moffat sustained actual damage proximately caused by the alleged misrepresentations and because it fails to comply with Rule 9(b) of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court grants Defendants' motion.

## BACKGROUND

For purposes of this Opinion, the Court accepts the following allegations as true.

### I. The Parties

Raymond Moffat is an employee and a major shareholder of Source 110 Inc., an Illinois corporation. (R. 12-1; Def.'s Mot. to Dismiss Compl. at ¶3.) Moffat is insured under a UniCare Midwest Participating Provider[1] Major Medical Plan (the "Plan")[2]. (*Id.* ¶1.) Raymond Moffat is married to Tracey Moffat. (*Id.* ¶2.) Tracey Moffat contracted cancer in 2003 and went to Participating Providers for treatment. (*Id.*)

Defendants sell Participating Provider major medical plans in various states. (*Id.* ¶4-6.) Moffat also brings this suit against any other UniCare-related companies that sell Participating Provider Major Medical Plans in the United States. (*Id.* ¶7.)

Moffat has not included the Plan as a defendant.

### II. The Plan

A 58 page Certificate of Coverage that Moffat attached to his Complaint sets forth the

---

[1]The Complaint defines "Participating Providers" as those with whom UniCare Midwest has contracted to provide medical services to its insureds. (*Id.* ¶1.)

[2]Moffat also alleges that the Plain, sold by UniCare Midwest to Source 110, is an employee benefit plan under ERISA, and Moffat is a participant in the Plan. (*Id.* ¶3.)

2

terms of the Plan. (*Id.* ¶15.) The Certificate of Coverage, titled "Unicare 1000," became effective January 1, 2003. (*Id.*) The Plan is called a "Participating Provider Major Medical Plan" because it provides for greater benefits if an insured uses UniCare Midwest's Participating Providers. (*Id.* ¶16.) The Plan provides that a Participating Provider must accept as full payment the rate negotiated with UniCare Midwest. (*Id.*) The Plan defines a "Negotiated Rate" as "the rate of payment that UNICARE has negotiated with a Participating Provider for Covered Services." (*Id.*) The Plan explains that if an insured goes to a Non-Participating Provider, the insured may be liable for amounts exceeding the Covered Expenses, and therefore the "personal financial costs may be considerably higher than when You use a Participating Provider." (*Id.*)

The Plan states that it limits the medical costs that the insured must pay. Under the Plan, each insured person has an annual deductible of $1,000. (*Id.* ¶18.) Once the insured meets the annual deductible, UniCare Midwest pays 70% of Covered Expenses until the insured meets the Out-of-Pocket Maximum of $5,000 per insured. (*Id.*) After that, UniCare Midwest pays 100% of Covered Expenses. (*Id.*) The Plan's definition of "Covered Expenses" provides multiple layers of protection to the insured. (*Id.* ¶21.) First, if an insured uses a Participating Provider, the Covered Expenses will not exceed the Negotiated Rate. (*Id.*) Second, the Plan further limits Covered Expenses by providing other specific maximums described in the Plan. (*Id.*) The plan provides an additional layer of protection unique to Infusion Therapy. (*Id.* ¶26.) The Plan promises that "UNICARE will direct any outpatient Course of Treatment to the most cost effective medically appropriate setting." (*Id.* ¶26.)

UniCare's "Guides" and the "You Choose" brochure publicize the Plan's limits on costs to the insured. UniCare distributes the "Guide" and the "You Choose" brochure to its insureds,

3

including Moffat. (*Id.* ¶¶32-36, 39, 45, 48.)

### III.     The Dispute Over Benefits

After being diagnosed with cancer, Tracey Moffat received Infusion Therapy at Evanston Northwestern Healthcare, a Participating Provider. (*Id.* ¶28.) While undergoing this course of treatment, Moffat began to receive invoices from Evanston Hospital and Explanations of Benefits ("EOB") from UniCare Midwest. (*Id.* ¶29.) The invoices and EOB's ultimately stated that Moffat is liable for $48,000 of the cost of the Infusion Therapy. (*Id.*) After Moffat complained, UniCare Midwest admitted to Moffat that it does not have a Negotiated Rate with its Participating Providers for Infusion Therapy, nor are there any limits on charges from Participating Providers. (*Id.* ¶30.) UniCare also refused to pay 70% of the charges even though Tracey Moffat received Infusion Therapy from Participating Providers. (*Id.*) Further, UniCare refused to apply the Plan's Out-of-Pocket Maximum. Finally, UniCare Midwest stated to Moffat that the law prohibited it from directing Tracey Moffat "to the most cost effective medically appropriate setting." (*Id.*)

## ANALYSIS

### I.     Legal Standard

#### A.     Rule 12(b)(6)

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of a complaint, not the merits of the case. *Triad Assocs., Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989). When deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court views "the complaint in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from those allegations in his or her

favor." *Lee v. City of Chicago*, 330 F.3d 456, 459 (7th Cir. 2003). "A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cole v. U.S. Capital*, 389 F.3d 719, 724 (7th Cir. 2004) (quotations and citations omitted). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Id.*, quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

### B. ERISA Claims for Benefits

ERISA §502(a)(1)(B) provides that "[a] civil action may be brought – (1) by a participant or beneficiary [] (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Generally, the Seventh Circuit limits a § 502(a)(1)(B) claim for benefits to a suit against the plan as an entity. *Blickenstaff v. R.R. Donnelley & Sons Co. Short Term Disability Plan*, 378 F.3d 669, 674 (7th Cir. 2004); *also see Neuma, Inc. v. AMP, Inc.*, 259 F.3d 864, 872 n.4 (7th Cir. 2001) ("We have continually noted that 'ERISA permits suits to recover benefits only against the Plan as an entity.'"), quoting *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1490 (7th Cir. 1996). Courts in this Circuit have recognized limited exceptions to the general rule set forth in *Jass*. *See Mein v. Carus Corp.*, 241 F.3d 581, 585 (7th Cir. 2001) (holding that the employer was a proper defendant to an ERISA claim because the employer and the plan were "closely intertwined"); *Riordan v. Commonwealth Edison Co.*, 128 F.3d 549 (7th Cir. 1997) (same); *also see Madaffari v. Metrocall Cos. Group*, No. 02 C 4201, 2004 WL 1557966 (N.D. Ill. July 6, 2004) (allowing plaintiff to sue under § 502(a)(1)(B) the insurance company who determined the claims because the plan had no assets and there was

5

ambiguity in determining the identity of the plan entity); *Rivera v. Network Health Plan of Wisconsin*, 320 F.Supp.2d 795 (E.D. Wisc. 2004) (denying insurance company's summary judgment motion because the plan documents were still missing and it was not clear whether the insurance company was the plan administrator or whether any other party was necessary for complete relief to be accorded); *Penrose v. Hartford Life & Accident Ins. Co.*, No. 02 C 2541, 2003 WL 21801214 (N.D. Ill. Aug. 4, 2003) (allowing plaintiff to sue insurance company when the identity of the plan entity was unknown to the parties, even after some discovery).

## II. Under Seventh Circuit Law, Moffat Fails to State a Claim Under ERISA § 502(a)(1)(B) Against Defendants

Defendants argue that under Seventh Circuit law the Plan is the only proper defendant to Moffat's § 502(a)(1)(B) claim for benefits and therefore the Court should dismiss Moffat's ERISA claim because none of the Defendants is the Plan. Moffat responds that Seventh Circuit law permits a claim for benefits against insurance companies in two situations applicable to this case. First, Moffat contends that a plaintiff may sue an insurance company for claim benefits when there is no separate plan entity. Second, Moffat contends that a plaintiff may sue an insurance company for claim benefits when it acts as the plan administrator. The Court addresses these arguments in turn.

### A. Moffat has not Alleged that No Separate Plan Entity Exists

Moffat relies on the Court's recent decision in *Madaffari*, denying a motion to dismiss an ERISA claim for benefits against an insurance company. 2004 WL 1557966, *2-5. *Madaffari*, citing Judge Lefkow's opinion in *Penrose*, 2003 WL 21801214, recognized a limited exception to the general rule in the Seventh Circuit that the plan is the only proper defendant to a claim for

...

benefits. In *Penrose*, the court originally dismissed the claim for benefits against the insurance company under the theory that the plan was the only proper defendant. *Id.* at *1. After some discovery, however, the identity of the plan entity still remained unclear. *Id.* The court granted the plaintiff's motion for reconsideration and reinstated the § 502(a)(1)(B) claim against the insurance company, reasoning that the insurance company had "the final word on whether a claim for benefits [would] be paid to a beneficiary [and] also [was] the party that funds the plan." *Id.* at *3.

The Court in *Madaffari*, faced similar facts to those in *Penrose*. Like *Penrose*, the insurance company governed claim determinations and provided benefits in the event of a successful claim. 2004 WL 1557966, *4. Similar to the absent plan entity in *Penrose*, the plan entity in *Madaffari* had no assets and was, at best, ambiguously identified in the Summary Plan Description. *Id.* In *Madaffari*, the plaintiff attempted to name a plan entity as a defendant and that entity had filed a motion to dismiss of its own, demonstrating that it had no assets and confusion existed in identifying the proper plan entity. *Id.*

Understandably, Moffat attempts to frame the facts of his case to fit the limited holdings of *Madaffari* and *Penrose*. Here, unlike *Madaffari* and *Penrose*, from the face of Moffat's pleadings and attachments, a plan entity actually exists. Moffat attaches a copy of the Certificate of Coverage to his Complaint, that he admits constitutes a "plan" under Supreme Court law. (R. 16-1; Pl.'s Resp. at 4.)³ Moffat's Complaint not only fails to allege that a plan entity does not

---

³Moffat attempts to have it both ways, arguing that it does not know the specifics of the Plan because it only has the policy document represented by the Certificate of Coverage, while simultaneously arguing that the Certificate of Coverage constitutes a "plan" under Supreme Court law. *See Pegram, et al. v. Herdrich*, 530 U.S. 211, 222-23, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000) ("Rules governing collection of premiums, definition of benefits, submission of claims, and

7

exist, but in fact specifically alleges wrongdoing on the part of the plan as an entity, therefore alleging that such an entity does exist:

> The Plan continued these same deceptive acts and practices by falsely representing that Unicare Midwest had Negotiated Rates with Participating Providers of Infusion Therapy, that if the insured used Participating Providers for Infusion Therapy that Unicare Midwest would pay 70% of the cost, that Unicare Midwest would direct Tracey Moffat "to the most cost effective medically appropriate setting", and that if the Insured used Participating Providers for Inufsion Therapy the $5,000 annual Out-of-Pocket Maximum would apply.

(R. 1-1; Compl. at ¶35.) While a formal plan name may not be apparent from the face of the Certificate of Coverage, as Defendants point out, ERISA provides for service of process on the plan by serving the plan administrator. 29 U.S.C. § 1132(d). The Certificate of Coverage specifically identifies the appropriate plan administrator.[4] (R. 1-1; Compl. Ex. C at 56).

Accordingly, based on its pleadings and the attachments to those pleadings, Moffat has failed to show that he falls within the limited exceptions set forth in *Penrose* and *Madaffari*. Therefore, the general rule of the Seventh Circuit applies and the plan entity is the proper defendant for Moffat's claim under ERISA § 502(a)(1)(B).

### B. Moffat has not Alleged that Defendants are Plan Administrators

Moffat also contends that it may sue the Defendants for denial of benefits because they are

---

resolution of disagreements over entitlement to services are the sorts of provisions that constitute a plan.")

[4] It is also noteworthy that in both *Penrose* and *Madaffari*, the plaintiff had plainly made a good faith effort to identify the plan entity from whom it could obtain relief. In *Penrose*, the plaintiff had attempted to identify the plan entity through discovery and had failed. In *Madaffari*, the plaintiff had actually sued the plan entity, but then met confusion in the actual identity of the plan and learned, through the plan itself, that the plan did not have any assets. There has been no showing, through either Moffat's pleadings or the briefing, that Moffat has made any good faith effort to identify the plan entity or determine whether the plan can provide complete relief.

8

plan administrators. Moffat points to a number of cases recognizing that plan administrators may be proper defendants to a claim for benefits under § 502(a)(1)(B). *See Rivera*, 320 F.Supp.2d at 799; *see also Jass*, 88 F.3d at 1490. Even assuming that the Seventh Circuit permits plaintiffs to sue plan administrators for denial of benefits, Moffat has failed to allege, or even argue, that Defendants qualify as "plan administrators." ERISA specifically defines an "administrator" as:

> (i) the person specifically so designated by the terms of the instrument under which the plan is operated;
>
> (ii) if an administrator is not so designated, the plan sponsor; or
>
> (iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe.

29 U.S.C. §1002(16)(A). Accepting Moffat's allegations as true, the Certificate of Coverage sets forth the terms of the Plan. (R. 1-1; Compl. ¶15 ("The Plan is set forth in a 58 page Certificate of Coverage (attached as Exhibit C.)).) The Certificate of Coverage provides that the "Plan Administrator" is "in no event" UniCare, and instead "refers either to the Group or to a person or entity other than [UniCare], engaged by the Group to perform or assist in performing administrative tasks in connection with the Group's health plan." (R. 1-1; Compl. Ex. C. at 56.) The Certificate of Coverage defines "Group" as "the business entity to which [UniCare] issued the Policy. (*Id.* at 17.) Moffat's Complaint alleges that UniCare Midwest sold the Plan to Source 110, Moffat's employer. (R. 1-1; Compl. at ¶3.) Accordingly, accepting Moffat's allegations as true, while the Plan designates an entity to serve as plan administrator, there is no set of facts under which any Defendant could serve as the "plan administrator."[5]

---

[5]Indeed, under the terms of the Certificate of Coverage, the plan administrator appears to be either Source 110, or "a person or entity [other than UniCare] engaged by [Source 110] to

9

Moffat points out that at least one district court case in this circuit has recognized that a party may still be a plan administrator, capable of being sued for denial of benefits, even if that party is not the entity designated as the administrator in the plan. *Rivera*, 320 F.Supp.2d at 799 ("As a practical matter, the person designated the administrator by the terms of the instrument under which the plan is operated may have nothing to do with administering the plan.") In *Rivera*, however, the court did not have before it any document that represented the terms of the plan, and therefore, relied on the express allegation in the complaint that the defendant was "both the plan and the plan administrator for these subscribers." *Id.* at 801. Here, the Court does have a document – the Certificate of Coverage – that Moffat alleges sets forth the terms of the Plan. The Certificate of Coverage expressly designates an entity as the plan administrator. Further, and unlike *Rivera*, Moffat's Complaint does not allege that any Defendant is the plan administrator.

Furthermore, since the *Penrose*, *Madaffari*, and *Rivera* decisions, the Seventh Circuit has noted that "a § 502(a)(1)(B) claim for benefits [is] generally [] limited to a suit against the Plan, not an employer [] or the claims evaluator []." *Blickenstaff*, 378 F.3d at 674. The Court recognizes that the above language is not an express holding because the plaintiff in *Blickenstaff* waived any argument regarding proper defendants under § 502(a)(1)(B). *See Blickenstaff v. R.R. Donnelley & Sons Co. Short-Term Disability Plan*, No. IP 00-983-C-B/S, 2001 WL 87480, *2 (S.D. Ind. Jan. 29, 2001). The Seventh Circuit's language, however, supports that merely being active in deciding claims (e.g., "the claims evaluator") does not transform an insurance company into a proper defendant under § 502(a)(1)(B). Accordingly, Moffat's allegations in Paragraphs

---

perform or assist in performing administrative tasks in connection with Source 110's health plan." (R. 1-1, Compl. Ex. C at 56.)

29-30 of his Complaint that Defendant UniCare Midwest participated in rejecting Tracey Moffat's claims is not sufficient, by itself, to allege that Defendants are "plan administrators" under ERISA.

Moffat has failed to allege facts sufficient to show that the general rule of the Seventh Circuit does not apply, and therefore, it has failed to state a claim against Defendants under ERISA § 502(a)(1)(B).[6] Accordingly, the Court dismisses Moffat's ERISA claim pursuant to Rule 12(b)(6). Because it is likely that the Plan is a proper defendant, the Court dismisses Moffat's ERISA § 502(a)(1)(B) claim without prejudice.

### III. Moffat's Illinois Consumer Fraud Act Claim

42 U.S.C. § 1367(c)(3) allows a federal district court to decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which it has original jurisdiction. Moffat's Complaint alleged that the Court had subject matter jurisdiction over this action under ERISA, 29 U.S.C. § 1132(e), and therefore by virtue of 28 U.S.C. § 1331. Having dismissed the only federal claim in the action, the Court declines to exercise supplemental jurisdiction over the remaining Illinois Consumer Fraud claim.[7]

---

[6] The Court does not reach the issue whether Moffat is the proper plaintiff in this case.

[7] The Court does not reach any of Defendants' arguments to dismiss, pursuant to Rule 12(b)(6), Moffat's Illinois Consumer Fraud claim. This Opinion does not prejudice Defendants from re-raising these arguments should Moffat amend its pleadings to state a federal cause of action such that the Court has supplemental jurisdiction over the Illinois Consumer Fraud claim.

11

## CONCLUSION

Pursuant to Rule 12(b)(6), the Court dismisses, without prejudice, Moffat's ERISA claim under § 502(a)(1)(B). Because the Court does not have subject matter jurisdiction over Moffat's Illinois Consumer Fraud claim, the Court also dismisses that claim without prejudice. Plaintiff has until February 21, 2005 to file an Amended Complaint consistent with this Opinion.

DATED: January 20, 2005          ENTERED

AMY J. ST. EVE
United States District Court Judge