# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RAYMOND MOFFAT, TRACEY MOFFAT, and SOURCE 110, INC., as plan administrator of UniCare Midwest Plan Group 314541, individually, and on behalf of all others similarly situated, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) No. 04 C 5685 |
| UNICARE MIDWEST PLAN GROUP 31451, UNICARE HEALTH INSURANCE COMPANY OF THE MIDWEST, UNICARE LIFE AND HEALTH INSURANCE COMPANY, UNICARE HEALTH INSURANCE COMPANY OF TEXAS; and UNICARE INSURANCE COMPANY,[1] | ) ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiffs Raymond Moffat, Tracey Moffat, and Source 110, Inc. ("Source 110") filed the present two-count Second Amended Class Action Complaint seeking benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B), and also alleging a breach of fiduciary duty claim under 29 U.S.C. § 1132(a)(2), (a)(3), against Defendants UniCare Midwest Plan Group 31541 (the "Plan"), UniCare Health Insurance Company of the Midwest ("UniCare Midwest"), UniCare Life and Health Insurance Company ("UniCare Life"), and UniCare Health Insurance Company of Texas ("UniCare Insurance Texas"). Before the Court is Defendants' Amended Motion to Dismiss the Second Amended Class Action Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)

---

[1] Plaintiffs voluntarily dismiss Defendant UniCare Insurance Company because it did not sell insurance plans during the relevant time period. (R. 145-1, Pls.' Reply Mem. for Mot. for Class Certification, at 1 n.1.)

and Rule 12(b)(7).² Also before the Court is Plaintiffs' Motion for Class Certification under the Second Amended Complaint pursuant to Rule 23. For the reasons set forth below, the Court grants in part and denies in part Defendants' Amended Motion to Dismiss. The Court denies Plaintiffs' Motion for Class Certification.

## BACKGROUND

### I. Prior Motion to Dismiss

The Court granted Defendants' first motion to dismiss because Plaintiffs had not named the Plan as a Defendant pursuant to established Seventh Circuit case law. *See Blickenstaff v. R.R. Donnelley & Sons Co. Short Term Disability Plan,* 378 F.3d 669, 674 (7th Cir. 2004) (when asserting claim for benefits under Section 502(a)(1)(B), claim must be brought against plan). Plaintiffs have since named the Plan as a Defendant in their First and Second Amended Complaints.

### II. Facts

Plaintiffs Raymond Moffat and Tracey Moffat are insured under UniCare Midwest Plan Group 314541 (the "Plan") (R. 84-1, Second Am. Comp. ¶¶ 1, 3.) Plaintiff Source 110, Raymond Moffat's employer, is the Plan administrator. (*Id.* ¶¶ 3, 15.) The Plan is a Participating Provider Major Medical insurance policy. (*Id.* ¶ 1.) Participating Providers are those with whom UniCare Midwest has contracted to provide medical services to its insureds.

---

² The Court reminds Defendants that Northern District of Illinois Local Rule 5.2(b) requires that the size of the type font in legal briefs must be 12 points and that the type font in the footnotes must be no less than 11 points. Further, Local Rule 7.1 requires briefs to be no longer than 15 pages. Therefore, a party must request leave from the Court to file any brief over 15 pages. The Court may strike any future briefs that do no conform with these rules. *See* Local Rule 5.2(d); Local Rule 7.1.

(*Id*.) The UniCare Defendants sell Participating Provider major medical plans in various states. (*Id.* ¶¶ 5, 6, 7.)

The Plan provides that a Participating Provider must accept as full payment the rate negotiated with UniCare Midwest. (*Id.* ¶ 20.) The Plan defines a "Negotiated Rate" as "the rate of payment that UNICARE has negotiated with a Participating Provider for Covered Services." (*Id.*) In addition, under the Plan, each insured person has an annual deductible of $1,000. (*Id.* ¶¶ 16, 21.) Once the insured meets the annual deductible, UniCare Midwest pays 70% of Covered Expenses until the insured meets the Out-of-Pocket Maximum of $5,000 per insured. (*Id.* ¶¶ 2, 16, 21.) After that, UniCare Midwest pays 100% of Covered Expenses. (*Id.* ¶ 21.)

In 2003, Tracey Moffat, who was diagnosed with cancer, went to fourteen Participating Providers for diagnosis, treatment, and surgery. (*Id.* ¶ 27.) From June 2003 until September 2003, she received infusion therapy at Evanston Northwestern Healthcare ("ENH"), which is a Participating Provider. (*Id.* ¶ 32.) While undergoing this course of treatment, UniCare Midwest sent invoices and Explanations of Benefits to the Moffats stating that they were liable for $48,000 of the cost of the infusion therapy. (*Id.* ¶ 35.) Plaintiffs allege that UniCare Midwest wrongly refused to pay the amounts that ENH charged which exceeded Covered Expenses as defined by the Plan.

## ANALYSIS

### I. Service and Summons

Defendants assert that Plaintiffs failed to properly serve the Plan under Federal Rule of Civil Procedure 4, and thus the Court should dismiss Plaintiffs' Second Amended Complaint with prejudice. Plaintiffs counter that they properly served the Plan with the First Amended

Complaint and received the waiver of service within the 120 days allowed by Rule 4, but that they did not file the Plan's waiver of service within the same 120 days. Nevertheless, Plaintiffs also served the Plan with the Second Amended Complaint and filed the Plan's waiver of service within 120 days of service. As such, Plaintiffs ask the Court to exercise its discretion and extend the time they had to file the waiver of service for the First Amended Complaint.

Rule 4(m) allows a district court to dismiss a case without prejudice if a plaintiff fails to perfect service of the summons and complaint upon the defendant within 120 days after filing the complaint if the plaintiff cannot show good cause for failing to do so. *See* Fed.R.Civ.P. 4(m); *see also Coleman v. Milwaukee Bd. of Sch. Dir.,* 290 F.3d 932, 933-34 (7th Cir. 2002). Seventh Circuit case law also allows for the Court to extend the time for service based on excusable neglect. *Coleman,* 290 F.3d at 934; *see also* Fed.R.Civ.P. 6(b). Under the excusable neglect standard, the Court has the discretion to extend the deadline as long as the extension is reasonable. *Coleman,* 290 F.3d at 934; *see also Henderson v. United States,* 517 U.S. 654, 662, 116 S.Ct. 1638, 134 L.Ed.2d 880 (1996). The *Coleman* decision lends the following guidance in making a determination under the excusable neglect standard:

> Where ... the defendant does not show any actual harm to its ability to defend the suit as a consequence of the delay in service, where indeed it is quite likely that the defendant received actual notice of the suit within a short time after the attempted service, and where moreover dismissal without prejudice has the effect of dismissal with prejudice because the statute of limitations has run since the filing of the suit ..., most district judges probably would exercise lenity and allow a late service, deeming the plaintiff's failure to make timely service excusable by virtue of the balance of hardships.

*Coleman,* 290 F.3d at 934.

Here, the Plan's status as a Defendant was the subject of Defendants' first motion to dismiss. Indeed, in dismissing Plaintiffs' original Complaint, the Court ordered that Plaintiffs

4

must include the Plan as a Defendant if Plaintiffs wished to pursue their claim under 29 U.S.C. § 1132(a)(1)(B). Plaintiffs added the Plan as a Defendant to their First Amended Complaint and served the Plan by sending a copy of the First Amended Complaint to the Plan administrator, Source 110. Source 110 signed the waiver of service on May 2, 2005, within the 120 day period permitted by Rule 4(m). Plaintiffs' counsel, however, did not file the Plan's executed waiver of service with the Clerk of Court until December 28, 2005, the same day Plaintiffs' counsel filed the waivers of service executed by the UniCare Defendants. (*See* R. 101-1, 102-1, 103-1, 104-1.) Furthermore, Plaintiffs properly served the Second Amended Complaint with the Plan on December 21, 2005 and filed the Plan's waiver of service with the Clerk of Court on December 29, 2005. (R. 107-1.) As such, the Plan was put on notice of the lawsuit within the 120 period and there is no indication from the record that the Plan suffered prejudice because Plaintiff was late in filing the waiver of service.

Meanwhile, Defendants fail to address the excusable neglect standard. In fact, Defendants do not discuss the excusable neglect standard, but instead argue that because Plaintiffs have not shown good cause, the Court must dismiss the Second Amended Complaint with prejudice. Rule 4(m), however, unequivocally states that under these circumstances the Court can only dismiss a claim without prejudice. *See* Fed.R.Civ.P. 4(m); *see also Coleman,* 290 F.3d at 933-34. Further, no factors surrounding the service issue warrant a dismissal with prejudice.

Plaintiffs' late filing of the Plan's waiver of service may stand. The Court thus denies Defendants' Motion to Dismiss pursuant to Rule 12(b)(7) for failure to properly join a necessary party.

5

**II.     Standing**

Next, Defendants argue that the Court must dismiss the UniCare Defendants except for UniCare Midwest from this lawsuit because the other UniCare Defendants did not cause any injury to the named Plaintiffs. Indeed, Article III requires that plaintiffs must allege that they sustained an injury-in-fact that is "fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Johnson v. Allsteel, Inc.,* 259 F.3d 885, 888 (7th Cir. 2001) (citation omitted); *see also Payton v. County of Kane*, 308 F.3d 673, 677 (7th Cir. 2002).

Relying on *LaMar v. H & B Novelty & Loan Co.,* 489 F.2d 461 (9th Cir. 1973) and the Seventh Circuit's decision in *Payton,* Plaintiffs argue that the UniCare Defendants are "juridically linked," and thus Plaintiffs have standing to sue each UniCare Defendant on behalf of the putative classes. Based on the class action requirements under Federal Rule of Civil Procedure 23, the *LaMar* court concluded that, in general, a plaintiff who did not have a cause of action against each defendant could not satisfy the "typicality" or the "fair and adequate representation" elements of class certification. *Id.* The Ninth Circuit, however, reasoned that a plaintiff may satisfy the class requirements if plaintiff suffered an identical injury and "all injuries are the result of a conspiracy or concerted schemes between the defendants" or where "all defendants are juridically related in a manner that suggests a single resolution of the dispute would be expeditious." *Id.* at 466.

In *Payton,* the Seventh Circuit applied the juridical link doctrine to a class action in which plaintiffs brought a lawsuit against 19 different Illinois county sheriffs' offices challenging bail bond fees. *See id*. at 675. The *Payton* court concluded that "given the bail bond

fee is imposed pursuant to a state statute, and that county sheriffs are for this purpose an arm of the state, ... it is reasonable for the putative plaintiff class to try to hold all counties accountable within one suit." *Id.* at 680. Skeptical of the terminology "juridical link," the *Payton* court concluded that the real inquiry under the circumstances was whether the named plaintiffs could represent a class of people who were injured by the bail bond statute in other counties. *Id.* at 679-80. To answer this inquiry, the *Payton* court remanded the matter to the district court to address the class certification issues before addressing the named plaintiffs' standing. *Id*. at 680 (citing *Ortiz v. Fibreboard,* 527 U.S. 815, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999)) (courts should determine class certification issues before conducting standing inquiries when certification issues are "logically antecedent" to Article III concerns and pertain to statutory standing); *see also Portis v. City of Chicago*, 347 F.Supp.2d 573, 579 (N.D. Ill. 2004) ("*Payton* court found it proper to address the class action issues before addressing the named plaintiffs' lack of standing to pursue claims against certain defendants"). Accordingly, the Court turns to Plaintiffs' Motion for Class Certification before addressing Plaintiffs' juridical link argument, particularly because Plaintiffs seek certification of not only two Plaintiff Sub-Classes, but of a Defendant Class as well.

### III. Class Certification

#### A. Legal Standard

Federal Rule of Civil Procedure 23(a) provides that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses

7

of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a); *Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 985 (7th Cir. 2002) (class must satisfy requirements of numerosity, commonality, typicality, and representativeness). Failure to meet any one of these Rule 23(a) requirements precludes class certification. *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993).

A party seeking class certification must also show that the proposed class satisfies one of the requirements set forth in Rule 23(b). *Payton,* 308 F.3d at 680. In this case, Plaintiffs request certification of the proposed classes pursuant to Rule 23(b)(3), which applies when "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). Under Rule 23(b)(3), members of a certified class may opt out and pursue their claims separately. *Berger v. Xerox Corp. Ret. Income Guarantee Plan,* 338 F.3d 755, 763 (7th Cir. 2003).

The party seeking class certification has the burden of establishing that certification is proper. *Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 596 (7th Cir. 1993). In determining whether a party has carried that burden, a court need not accept all of the complaint's allegations as true. *See Szabo v. Bridgeport Mach., Inc.*, 249 F.3d 672, 675 (7th Cir. 2001). Rather, in deciding whether to certify a class, the court "should make whatever factual and legal inquiries are necessary under Rule 23." *Id.* at 676. District courts have broad discretion in determining motions for class certification. *Retired Chicago Police*, 7 F.3d at 596; *see also Uhl*, 309 F.3d at 985.

8

B.     **Proposed Classes**

1.     **Plaintiffs' Proposed ERISA Sub-Class**

Plaintiffs seek certification of a Plaintiff Class divided into two sub-classes: (1) the ERISA Plaintiff sub-class comprised of class members whose claims are governed by ERISA; and (2) the Non-ERISA Plaintiff sub-class comprised of class members whose claims are governed by state contract law. Although Plaintiffs have defined the ERISA sub-class several times during briefing of these motions,[3] Plaintiffs' final definition reads:

> Participants and beneficiaries under UniCare Small Group Plans who made claims for Infusion Therapy received from a Participating Provider, and for whom UniCare did not pay all that portion of the claim that exceeded Covered Expenses. The Plan administrators also are Class Members.

(R. 145-1, Pls.' Reply Mem. for Mot. for Class Certification, at 5.)

Here, Defendants argue that Plaintiffs' claims and defenses are not typical of the ERISA sub-class under Rule 23(a)(3), and thus class certification of the ERISA sub-class is improper. "[T]he typicality requirement primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Retired Chicago Police*, 7 F.3d at 596-97. A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). "Whether [a class representative's] claims are typical of those of the class members she represents is closely related to the commonality inquiry." *Keele*

---

[3] Because the Court granted Defendants' request to file a sur-reply, Plaintiffs' last changes to the class definitions do not prejudice Defendants.

*v. Wexler,* 149 F.3d 589, 595 (7th Cir. 1998).

Defendants contend that because the UniCare Defendants applied limitations on infusion therapy benefits differently depending on the setting in which the treatment was provided, the date of service, and which plan governed the claim, Tracey Moffat's claims are not typical of the proposed ERISA sub-class. For example, Tracey Moffat received her treatment as an out-patient. Had Moffat been in-patient at a hospital, UniCare Midwest would not have applied the benefit limitations to her infusion therapy. (R. 127-1, Defs' Opp. Memo., App. B, Baker Dec. ¶ 34, Kowalski Dec. ¶ 10.) Further, the UniCare Defendants have set forth evidence that they processed claims differently prior to early 2003 and after March 1, 2005, namely, that they did not apply benefit limitations for infusion therapy claims during those time periods. (*Id.*, Baker Dec. ¶¶ 24-25, 30.) UniCare Midwest, however, treated Tracey Moffat's claims based on her June through September 2003 treatments differently because it applied the infusion therapy benefit limitations as described in Moffats' Plan. (R. 84-1, Second Am. Compl, Small Group Plan, at 37, 39.) Finally, Defendants present evidence that not all UniCare Small Group Plans had limited infusion therapy benefits like the Moffats' Plan. (Defs' Opp. Memo., App. B, Gago Dec. ¶ 45.)

Plaintiffs do not address Defendants' arguments. Instead, in cursory fashion, Plaintiffs contend that "the Moffats' claim is quintessentially typical because UniCare administered their Plan and the other 248 Small Group Plans in the same way." (R. 142-1, Pls' Reply in Support of Class Certification, at 6.) Plaintiffs, however, do not describe how UniCare administered these claims in the "same way." Instead, Plaintiffs describe how UniCare Midwest allegedly breached the terms of the Moffats' Plan. At no point do Plaintiffs explain how their claims are typical of

10

the proposed ERISA sub-class or do anything to refute Defendants' evidence.

Consequently, Plaintiffs have failed in their burden of establishing that their claims are typical of the putative ERISA sub-class because Defendants have set forth uncontested evidence that their practice of administering infusion therapy benefits varied based on the setting in which the treatment was provided, the date of service, and which plan governed the infusion therapy claim. *See Retired Chicago Police Ass'n,* 7 F.3d at 596; *De La Fuente*, 713 F.2d at 232. Thus, the Court, in its discretion, denies Plaintiffs' proposed ERISA sub-class regarding both the Section 502(a)(1)(B) claim and breach of fiduciary duty claim.

### 2. Plaintiffs' Proposed Non-ERISA Sub-Class

Next, the Court considers whether Plaintiffs are proper class representatives for their Non-ERISA sub-class. Plaintiffs' final definition of this sub-class states:

> Insureds under UniCare Individual Plans who made claims for Infusion Therapy received from a Participating Provider, and for whom UniCare did not pay that part of the claim that exceeded Covered Expenses.

(Pls.' Reply Mem. for Mot. for Class Certification, at 19.) Under this definition, Plaintiffs contend that even though the Non-ERISA Plaintiffs' claims are based on state law instead of ERISA, the Non-ERISA Plaintiffs' claims are similar because they are based on language common to both the small group plans governed by ERISA and the individual plans that are not governed by ERISA. Defendants contend that Plaintiffs' ERISA claims are not typical of the proposed Non- ERISA sub-class, and thus Plaintiffs cannot represent this sub-class.

Here, Defendants have set forth evidence that some of UniCare's individual plans limited infusion therapy benefits during the relevant time period, while other plans did not. (Defs' Opp. Memo., App. B, Gago Dec. ¶¶ 19, 21.) Defendants also highlight other inconsistencies in the

11

individual plans issued in seven different states. (*Id.* ¶¶ 15-18.) More importantly, however, is that none of the named Plaintiffs has alleged a state law claim. Instead, their claims either directly fall under ERISA or are derivative of Tracy Moffat's ERISA claims. Because the Moffats and Source 110 are not members of the class they describe, namely, class members whose claims are governed by state contract law, they fail to fulfill the typicality requirement under Rule 23(a)(3). *See Harriston,* 92 F.2d at 703. As such, the Moffats and Source 110 cannot represent the Non-ERISA sub-class because they are not members of the proposed class. *See East Tex. Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed.2d 453 (1977) ("class representative must be part of the class"). Thus, Plaintiffs have failed in their burden of establishing that certification is proper as to the Non-ERISA sub-class regarding both the Section 502(a)(1)(B) claim and breach of fiduciary duty claim. *See Retired Chicago Police Ass'n,* 7 F.3d at 596.

### 3. Plaintiffs' Proposed Defendant Class

Plaintiffs also request certification of a Defendant Class regarding their Section 502(a)(1)(B) claim. Specifically, they request that Defendant Class comprise the named UniCare Defendants, UniCare Plan Group 314541, and other ERISA Plans. Again, Plaintiffs' definition of the Defendant Class has been a moving target. Plaintiffs' last definition of the Defendant Class states:

> UniCare Defendants and ERISA Plans that received claims from participants and beneficiaries for Infusion Therapy from Participating Providers and who did not pay that part that exceeded Covered Expenses.

(Pls.' Reply Brief, at 23.)

Defendants challenge Plaintiffs' request for Defendant Class certification under Rule

23(a)(4) arguing that they would not be adequate or fair representatives of the proposed Defendant Class. Under Rule 23(a)(4), class representatives must "possess the same interest and suffer the same injury as the class members." *Uhl*, 309 F.3d at 985 (citation omitted). To establish the "adequacy" requirement, Plaintiffs must show that (1) the claims are not antagonistic or in conflict with those of the class, (2) the class representative has sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) the representative is represented by competent, experienced counsel who would be able to prosecute the litigation vigorously. *See Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir. 1992); *Johnson v. Tellabs, Inc.,* 214 F.R.D. 225, 228-29 (N.D. Ill. 2002).

The UniCare Defendants first assert that their interests are antagonistic to the proposed Defendant Class. Specifically, the UniCare Defendants are insurance companies and their defense to Plaintiffs' section 502(a)(1)(B) claim is that they are not proper defendants under established Seventh Circuit law. *See Blickenstaff v. R.R. Donnelley & Sons Co. Short Term Disability Plan,* 378 F.3d 669, 674 (7th Cir. 2004) (when asserting claim for benefits under Section 502(a)(1)(B), claim must be brought against Plan). As such, the UniCare insurance companies' defense is in conflict with the interests of the unnamed Plans and the Moffats' specific Plan.

Second, the UniCare Defendants argue that they will not vigorously advocate on behalf of the Defendant Class because they have the option to "opt out" of the Plaintiffs' Section 502(a)(1)(B) claim, and in fact, contend that they will do so if the Court grants Plaintiffs' motion to certify the Defendant Class. As discussed, it is well-established that any member of a certified class in a Rule 23(b)(3) suit may "opt out" if they so desire. *See Henson v. East Lincoln Twp.*,

13

814 F.2d 410, 413 (7th Cir. 1987); *see also Payton,* 308 F.3d at 680.

Finally, the Court is reluctant to certify the Defendant Class based on due process and other related concerns. *See Thillens, Inc. v. Community Currency Exch. Assoc. of Ill., Inc.,* 97 F.R.D. 668, 674-75 (N.D. Ill. 1983) (there is "great judicial reluctance to certify a defendant class when the action is brought by a plaintiff class"). As the Seventh Circuit has articulated "[d]efendant classes, initiated by those opposed to the interests of the class, are more likely than plaintiff classes to include members whose interests diverge from those of the named representatives, which means they are more in need of the due process protections afforded by (b)(3)'s safeguards. It also means that they are less likely to satisfy the requirements of Rule 23(a)." *Ameritech Benefit Plan Comm. v. Communication Workers of Am.,* 220 F.3d 814, 820 (7th Cir. 2000). Such is the case here – the named UniCare insurance companies have divergent interests from the Plans and are not willing to represent the class if so ordered. Likewise, this proposed Defendant Class is not cohesive or homogeneous, and thus should not proceed under Rule 23. *See Baranski v. Vaccariello,* 896 F.2d 1095, 1098 (7th Cir. 1990). Therefore, the Court, in its discretion, denies Plaintiffs' motion to certify the Defendant Class regarding their Section 502(a)(1)(B) claim.[4]

## IV.  Juridical Link Exception

The Court returns to Plaintiffs' argument that the UniCare Defendants are juridically linked, and thus Plaintiffs have standing to sue the UniCare insurers that did not issue the Moffats' Plan, namely UniCare Life and UniCare Insurance of Texas. In *Payton*, the Seventh

---

[4] Because Plaintiffs' breach of fiduciary duty claim is against the named UniCare Defendants only, the Court need not address whether the proposed Defendant Class complies with Rule 23(a) in that regard.

Circuit observed that since *LaMar*, "other courts have suggested that if all the defendants took part in a similar scheme that was sustained either by a contract or conspiracy, or was mandated by a uniform state rule, it is appropriate to join as defendants even parties with whom the named class representative did not have direct contact." *Id.* at 679.

Here, Plaintiffs contend that because the UniCare Defendants are wholly-owned subsidiaries of WellPoint, Inc., Defendants are a common enterprise and can be juridically linked. Plaintiffs, however, fail to argue or present evidence that their injuries resulted from a scheme between the UniCare Defendants. Meanwhile, this is not a situation "where appropriate relief may only be obtained through one broad suit, and it will be impossible to find a named plaintiff to match every defendant," *see Payton,* 308 F.3d at 681, especially because Plaintiffs have failed to establish that they are appropriate class representatives and that their proposed Defendant Class is proper under Rule 23.

Plaintiffs often invoke the juridical link exception in the context of motions to certify defendant classes in bilateral class action lawsuits. *See Kohn v. Mucia*, 776 F.Supp. 348, 354 (N.D. Ill. 1991) (citing *La Mar v. H & B Novelty & Loan Co.,* 489 F.2d 461 (9th Cir. 1973)). Under the present circumstances, Plaintiffs invoke the juridical link doctrine as an exception to the rule that each named plaintiff must have a colorable claim against each defendant class member. *See Thillens,* 97 F.R.D. at 675-76. Because the Court denies Plaintiffs' request for class certification as to all proposed classes, especially the Defendant Class, it is questionable whether the juridical link doctrine may now apply. *See In re Eaton Vance Corp. Sec. Litig.*, 220 F.R.D. 162, 171 (D. Mass. 2004) (juridical link doctrine confined to class action analysis).

The juridical link exception is simply not appropriate under the circumstances of this

case. Because Plaintiffs have not established that Defendants UniCare Life and UniCare Insurance of Texas have caused them any injuries, the Court grants Defendants' motion to dismiss these Defendants from this lawsuit. Plaintiffs may proceed as individuals against UniCare Midwest and their Plan. *See Payton,* 308 F.3d at 677.

## CONCLUSION

For these reasons, the Court grants in part and denies in part Defendants' Amended Motion to Dismiss. The Court denies Plaintiffs' Motion for Class Certification under the Second Amended Complaint.

Dated: April 5, 2006

ENTERED

**AMY J. ST. EVE**
**United States District Court Judge**